MEMORANDUM *
Jerome Brown appeals the district court’s denial of the habeas petition he filed under 28 U.S.C. § 2254. Brown argues that the state court’s rejection of his challenge under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), in which he contended that the prosecutor impermissibly used peremptory challenges to strike two African American jurors on the basis of race, constituted an unreasonable application of Batson and re-suited from an unreasonable determination of the facts. We review de novo the district court’s denial of a § 2254 habeas petition, Bailey v. Rae, 839 F.3d 1107, 1111 (9th Cir.2003), and we reverse.
Under § 2254, we may grant relief only if the state court’s adjudication of a claim “was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or ... resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.” § 2254(d).
“Under the ‘unreasonable application’ clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court’s decisions but unreasonably applies that principle to the facts of the prisoner’s case.” Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003); see also id. (“The state court’s application of clearly established law must be objectively unreasonable.”). Under the “unreasonable determination of the facts” clause, we may grant relief if “any appellate court to whom [sic] the defect is pointed out would be unreasonable in holding that the state court’s fact-finding process was adequate.” Taylor v. Maddox, 366 F.3d 992, 1000 (9th Cir.2004). In challenges governed by this latter clause, AEDPA’s presumption of correctness afforded to state court factual findings and the elear-and-convincing standard of proof required to rebut that presumption, § 2254(e)(1), do not apply. Taylor, 366 F.3d at 1000.
The clearly established Supreme Court law laid out in Batson involves a three-part inquiry: “First, the defendant must make *591 a prima facie showing that a challenge was based on race. Second, the prosecution must offer a race-neutral basis for the challenge. Third, the court must determine whether the defendant has shown ‘purposeful discrimination.’ ” Kesser v. Cambra, 465 F.3d 351, 359 (9th Cir.2006) (en banc) (quoting Batson, 476 U.S. at 98, 106 S.Ct. 1712).
We agree with Brown that the state court’s rejection of his Batson claim resulted from an unreasonable determination of the facts and that he is entitled to habeas relief under § 2254(d)(2). In Kesser v. Cambra, a recent case granting relief on a Batson challenge under § 2254(d)(2), we held that “comparative [juror] analysis is required even when it was not requested or attempted in state court.” Id. at 361. In that case, we ruled that “by failing to consider comparative evidence in the record before it that undeniably contradicted the prosecutor’s purported motivations,” the state court had “unreasonably accepted his nonracial motives as genuine.” Id. at 358.[1]
As in Kesser, the state court’s determination of the facts in this case was unreasonable because it failed to consider crucial evidence in the voir dire transcript that undermined the prosecution’s proffered justifications for exercising its peremptory strikes. Because the state court’s determination of facts was unreasonable, we must set aside its erroneous findings and determine whether, on a proper review of the record, Brown has established a Bat-son violation. See id. at 360-371 (reviewing the voir dire transcript and concluding that it “refutes each of the prosecutor’s nonracial grounds, compelling the conclusion that his actual and only reason for striking [a nonwhite juror] was her race”); see also Taylor, 366 F.3d at 1008 (“When we determine that state-court fact-finding is unreasonable, ... we have an obligation to set those findings aside and, if necessary, make new findings.”). A careful review of the record before the state court reveals the prosecutor’s justifications to be pretextual.[2]
*592 The prosecutor asserted that he ' struck Juror Martin because he was concerned that she did not seem to understand or respond appropriately to certain voir dire questions. This assertion is unsupported by the record. Although the prosecutor stated that Martin misunderstood questions “[t]wo or three times,” the only example he cited was that, when asked whether she worked for the federal government, Martin answered, “United States.”. As the magistrate judge found, this was the only response that was “even questionably” inappropriate. Moreover, we conclude that Martin’s answer to the employment question cannot reasonably be viewed as inappropriate; as Brown points out, Martin, who was an employee of the United States Postal Service, was not actually an employee of the “federal government.” We note further that Martin had previously served on a grand jury for over a year and on a petit jury that reached a verdict; clearly she was able to comprehend legal proceedings. She had also attended at least two years of college. The prosecutor’s justification is simply implausible.[3]
The prosecutor declined to strike white jurors whose answers were far more inappropriate or unresponsive than Martin’s. For example, when asked what her four children did for a living, Juror Sassone replied, “Three in California, one in Missouri.” When asked whether she was “[acquainted with anyone in law enforcement,” Juror Southard responded, “Acquainted? What do you mean by ‘acquainted.’ ” “A prosecutor’s motives may be revealed as pretextual where a given explanation is equally applicable to a juror of a different race who was not stricken by the exercise of a peremptory challenge.” McClain v. Prunty, 217 F.3d 1209, 1220-21 (9th Cir.2000). What is more, the prosecutor failed to make any effort to clear up the reasons for Juror Martin’s allegedly *593 inappropriate responses. “[Ujnless he had an ulterior reason for keeping [Martin] off the jury we think he would have proceeded differently.... [W]e expect the prosecutor would have cleared up any misunderstanding by asking ... questions before getting to the point of exercising a strike.” Miller-El, 545 U.S. at 244, 125 S.Ct. 2317.
The prosecutor struck Juror Thrower supposedly because he was concerned that jury service would burden Thrower’s job search and because of a discrepancy between Thrower’s juror form and his oral testimony regarding his marital status. As with Juror Martin, the record does not support the prosecutor’s justifications. The trial judge predicted that the trial would last only one-and-a-half days, and Juror Thrower answered that he was “all right” with serving on the jury. By contrast, white jurors who stated that jury service would be a serious burden were not dismissed, including one white juror who noted a “fair possibility” that his wife would go into premature labor during the trial. A review of the record before the state court also reveals a number of seated jurors whose oral testimony at voir dire was at least as inconsistent, if not more so, with their juror forms in some respect. For example, Juror Freeman’s information sheet stated that he had never served on a jury, but he told the court at voir dire that he had. Juror Tucker’s sheet listed his wife’s occupation as “Homemaker,” but in his oral testimony he stated that she “[w]orks for a carpet manufacturer.” Moreover, the prosecutor “did not explain how [the discrepancy] might interfere with [Thrower’s] performance as a juror in this particular case,” nor did he attempt to clear up the reasons for the discrepancy before exercising a peremptory strike. Kesser, 465 F.3d at 364.
As in Kesser, “[although we must give deference to the [state court’s] findings of fact,” both the state trial court and the state supreme court in this case “ruled on the credibility of the prosecutor’s reasons without citing to any material from the voluminous voir dire.” Id. at 371. This defective factfinding process led to factual determinations that were “wrong, and unreasonably so.” Id. at 368. Having so concluded, our own review of the record convinces us that Brown has satisfied his burden of proof under Batson. Accordingly, we reverse the district court and grant relief under § 2254(d)(2).
We also agree with Brown that the Nevada courts applied Batson in an objectively unreasonable fashion by failing to engage in “a sensitive inquiry into such circumstantial and direct evidence of [discriminatory] intent as may be available,” which Batson’s third step clearly requires. Batson, 476 U.S. at 93, 106 S.Ct. 1712 (quoting Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 266, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977)) (internal quotation marks omitted). The third step of Batson imposes an “affirmative duty” on courts to evaluate the entire record to determine whether the prosecutor’s proffered reasons are pretextual. Lewis v. Lewis, 321 F.3d 824, 835 (9th Cir.2003). “Under Batson’s third step, state courts must review the record to root out” any “pretextual, make-weight justifications for ... race-based strikes.” Kesser, 465 F.3d at 371. We have explained that, “[a]t a minimum, this procedure must include a clear record that the trial court made a deliberate decision on the ultimate question of purposeful discrimination.” United States v. Alanis, 335 F.3d 965, 968 n. 2 (9th Cir.2003). Although the dissent is correct that the ultimate burden of persuasion never shifts from Brown, “the third step of Batson primarily involves the trier of fact.” Kesser, 465 F.3d at 359. Neither the state trial court nor the state supreme *594 court made any serious effort to conduct the requisite sensitive inquiry in this case.[4]
Here, the state court concluded without any analysis that Brown “simply allege[d]” that the prosecutor’s reasons were pretex-tual, “but has not demonstrated how.” Not only did the state court produce no “clear record,” but it produced no record at all to demonstrate that it had made a “deliberate decision” as to discrimination. It is not enough that the state court considered the prosecutor’s justifications to be plausible. Id. at 969. A desire to have trials proceed quickly cannot relieve trial courts of their clearly established Batson duties under the law of the Supreme Court and our circuit, and certainly state appellate courts have no excuse for failing to examine and discuss voir dire transcripts and to establish a record demonstrating that they have carried out their “affirmative duty” at step three — a duty to root out any pretextual justifications for the allegedly discriminatory action.
The state court’s failure to conduct the third step of the prescribed analysis constituted an unreasonable application of Batson. See Lewis, 321 F.3d at 835. Had the state court applied Batson in a reasonable manner, it would have discovered that the jarosecutor’s proffered justifications were unsupported, or even contradicted, by the record. Brown is therefore entitled to relief under § 2254(d)(1) of AEDPA, as well as under (d)(2).
Because Brown’s Batson claim is sufficient to support the issuance of the writ, we do not reach his claim of ineffective assistance of counsel.
REVERSED.

 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3.

. The dissent argues that we should not “fault a state trial court” for failing to consider evidence in the voir dire transcript, especially when such a transcript may not have been available to the trial court. Dis. op. at 2. We agree that a state trial court, such as the one in this case, cannot review a transcript that does not yet exist. This fact does not, however, relieve a state appellate court of its duty to conduct a comparative analysis of the voir dire transcript. See id. at 361 ("The 'factual basis’ for a comparative juror analysis is contained in the voir dire, which was submitted to the [state appellate court] and was part of the 'evidence presented in the State court proceeding.’ 28 U.S.C. § 2254(d)(2).”). In Boyd v. Newland, 467 F.3d 1139 (9th Cir.2006), a panel of this court originally held that Batson does not compel a court to conduct comparative juror analysis for the first time on appeal. See id., at 1147-48. It then amended its opinion in light of recent Supreme Court decisions, explaining that it "recognize[d] that our previous reading of Batson was too narrow and that Batson does contemplate a comparative juror analysis on appeal.” Id. It added that “comparative juror analysis is an important tool that courts should use on appeal.” Id. at 1149. Boyd also states that "[a] reviewing court cannot examine the ‘totality of the relevant facts' and 'all relevant circumstances’ surrounding a prosecutor's peremptory strike of a minority potential juror without an entire voir dire transcript.” Id. at 1151 (quoting Batson, 476 U.S. at 94, 96, 106 S.Ct. 1712) (citation omitted). Of course, the voir dire transcript serves a purpose in such cases only if the reviewing court reviews it.

. The dissent accuses us of "simply substituting] our judgment for the state supreme court's, as if we, too, were sitting in direct review.” Dis. op. at 2. It sounds as if we are doing something wrong when put that way, but the type of review in which we engage is the type we always afford in AEDPA cases when we find an "unreasonable determination of the facts” or an “unreasonable application” of Supreme Court law — we decide *592 whether, had the state court not unreasonably determined the facts or applied die law, it would have found a constitutional violation. See, e.g., Kesser, 465 F.3d at 360-71 (so finding); see also Boyd, 467 F.3d at 1149 ("Without engaging in comparative juror analysis, we are unable to review meaningfully whether the trial court's ruling at either step one or step three of Batson was unreasonable in light of Supreme Court precedent.”).

. The State points to another portion of Martin’s voir dire testimony that it asserts demonstrates her "confusion and inconsistency.” Martin indicated that she had been the victim of a crime in Nevada and that the authorities had caught the perpetrator. When asked, "Was that resolved satisfactorily for you?”, she replied "Somewhat” and then, "I think it could have been better.” The court next asked her, "Did you blame the State of Nevada because of that, the DA?”; Martin replied, "No.” The State argues that "[t]hese statements are fundamentally inconsistent, and would be of great concern to any prosecutor, as they demonstrate the probability of residual resentment, hard feelings, and bias toward the police and prosecutorial agencies. This jumbled line of thought was exactly as the prosecutor believed — inconsistent and confused.”
We cannot accept the State’s argument. First, the post hoc assertion that Martin was biased against the State was never mentioned at voir dire and therefore cannot help to justify the prosecutor's strike. See Miller-El v. Dretke, 545 U.S. 231, 251-52, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005). In any case, the assertion is wholly unsupported by the record; Martin specifically said that she did not blame the State or the DA for the way her case was handled. Second, the argument that Martin’s responses were "confused” and "inconsistent” is meritless. There is no confusion or inconsistency in Martin's replies that she thought that the resolution of her case could have been more satisfactory but did not blame the State or the DA. There are numerous consistent explanations for Martin’s statements — perhaps, for example, Martin blamed the judge or jury for what she perceived to be a less than fully satisfactory resolution, or perhaps she simply blamed chance or fate, or even "the system.”

. The dissent's quotation of Brown’s trial counsel, who stated at voir dire, "I'm not sure we’re really arguing anything here," is highly misleading. The dissent quotes Brown's counsel to suggest that even he believed that any problem in the jury selection process was not particularly serious. See dis. op. at 4. The two pages of the voir dire transcript that follow the dissent's quotation, however, show that Brown's counsel thought the problem very serious. Indeed, counsel ''challenged] this panel as a whole” and "move[d] to dismiss this panel and start fresh."